IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2:07-cv-05961 |
| | ) | |
| CITY OF NEWARK, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to LR 56.1(a)(2), the United States of America submits its memorandum of law supporting its motion for summary judgment.

ISSUES PRESENTED

1. The Property Clause and Supremacy Clause of the United States Constitution give Congress the exclusive power to determine the disposition of federal property. Congress, in turn, has given the Secretary of the Department of Veterans Affairs full discretion to determine when and how to dispose of DVA property. Can a state court authorize an involuntary sale of property titled to the DVA?

2. The United States is immune from a judicial tax or municipal lien sale absent an unequivocal waiver of sovereign immunity. Congress has not expressly mentioned tax or municipal lien sales in the statutes governing the DVA. Also, while Congress has authorized the Secretary to "sue and be sued," it has done so only as to home loan

3674298.1

guaranty matters and has expressly excepted from the "sue and be sued" clause garnishments and attachments of DVA property. Does a state court have jurisdiction to order the involuntary sale of federal property?

## STATEMENT OF THE CASE

By Sheriff's Deed in Judicial Sale dated January 4, 1983, the DVA purchased title to 26 Hobson Street, Newark, New Jersey known as Block 3059 Lot 33 (Gov't Ex. 1.) At all times until the February 2007 sale of the property, the DVA was the record title holder. (Gov't Ex. 4.)

On August 24, 1983, the DVA entered into an Installment Contract for Sale of Real Estate with Minne McKoy, Stewart McKoy, and Jerome McKoy concerning the property. Pursuant to paragraph 18 of the installment contract, title remained with the DVA until full payment of the purchase price had been made. Pursuant to paragraph 5 of the installment contract, the McKoys covenanted to pay all taxes and fees for 1983 and beyond, and the agreement was made subject to this covenant. (Gov't Ex. 1, ¶ 5.) This contract was not recorded in the real property records. (Gov't Ex. 5, ¶ 10.)

The McKoys have never made full payment on the installment contract, and on November 5, 2005, the DVA notified the McKoys the contract was terminated. The DVA has not conveyed title to the property to the McKoys or any other person or entity. (Id., ¶ 7.)

On December 16, 1999, the Collector of Taxes for the City of Newark issued a Certificate of Sale for Unpaid Municipal Liens to defendant Crusader Servicing Corporation for $185. (Gov't Ex. 4.)

On February 17, 2006, Crusader filed a complaint to foreclose on the certificate of sale in the Superior Court of New Jersey, Essex County. (Gov't Ex. 5.) The complaint erroneously states that the DVA transferred its interest to the property to the McKoys in the unrecorded installment contract. (Id.)

On November 22, 2006, the Superior Court entered a judgment directing the property be sold at public auction. And on February 27, 2007, the Sheriff for Essex County held a sale of the property where the winning bidder assigned its bid to defendant 26 Hobson Associates and a deed was issued to Hobson Associates as a result.

At no time has the DVA transferred title to this property to Hobson Associates or any other person or entity. (Walkey Decl. ¶ 7.)

**ARGUMENT**

The New Jersey Superior Court had no authority to sell the property by virtue of both the Property and Supremacy Clauses of the United States Constitution and principles of sovereign immunity. Accordingly, summary judgment must be awarded to the United States invalidating the sale and ordering the property titled to the DVA.

I.  The United States Constitution's Property and Supremacy Clauses Prohibited the Sale to Defendant 26 Hobson Associates.

Both the Property Clause and the Supremacy Clause of the United States Constitution prohibit forcible sales of federal property as was attempted here.  The Property Clause gives broad and *exclusive* power to Congress to determine when and how federal property will be disposed of while the Supremacy Clause further enforces this dictate by declaring federal control to be supreme.  Case law consistently cites these provisions in rejecting attempts by states to subject federal land to sale.  Congress has expressly given the Secretary sole authority to determine when and how DVA property is to be conveyed.  Thus, not only has Congress not consented to the sale here, the involuntary sale is expressly counter to congressional intent and its expressed authority.

The Constitution's Property Clause provides:  "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting ... Property belonging to the United States ..."  U.S. Const. art. IV, § 3, cl. 2.  Under this provision, Congress' power to dispose of property belonging to the United States is "without limitation."  State of Alabama v. State of Texas, 347 U.S. 272, 273 (1954); see also, Beaver v. United States, 350 F.2d 4, 8 (9th Cir. 1965) (title to United States property can only be divested by Act of Congress, and cannot be divested by mistake or by the acquiescence of government employees), cert. denied, 383 U.S. 937 (1966).

The Supremacy Clause further declares that "[t]his Constitution, and the Laws of the United States, which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supremacy Clause's very reason for being is to avoid conflicts that would arise if the federal government were subject to local controls. United States v. Allegheny County, 322 U.S. 174, 183 (1944).

As a result of the two constitutional clauses, the Supreme Court has held that "**[e]very** acquisition, holding, or disposition of property by the Federal Government depends upon proper exercise of a constitutional grant of power." Id. at 182 (emphasis added). The federal courts have also repeatedly rejected attempts by states or their political subdivisions to subject federal land to sale.

In United States v. Ansonia Brass & Copper Co., 218 U.S. 452 (1910), for example, a federal contractor building certain vessels for the United States became insolvent. Several of the contractor's unpaid creditors sought to have their state law liens against the vessels paid before the United States could take control of the vessels. One of the vessels – a dredge named the Benyuard – had been built under a contract whereby the United States assumed ownership of each of the parts as it paid for them. The Supreme Court held that title had passed to the United States and that the dredge was therefore not subject to seizure or encumbrance under state law. Ansonia Brass & Copper Co., 218 U.S. at 471. The Court stressed the paramount interest of the United States in its property:

> We are now treating of property which the United States owns. Such property, for the most obvious reasons of public policy, cannot be seized by authority of another sovereignty, against the consent of the government. The Benyuard, as fast as constructed, became one of the instrumentalities of the government, intended for public use, and could not be seized under state laws to answer the claim of a private person, however meritorious.

Ibid.; see also, Wilcox v. Jackson, 38 U.S. 498, 517 (1839) (to permit state to say when title to United States property passes would be to make state law paramount).

The Supreme Court then extended the above analysis to state tax sales of federal property. In City of New Brunswick v. United States, 276 U.S. 547 (1928), a case factually analogous to the present one, the City had assessed property taxes against lots in which the United States Housing Corporation, a federal instrumentality, held legal title but which had been sold under installment purchase contracts to private purchasers. After holding that the private purchasers were equitable owners and that the lots could therefore be taxed, the Supreme Court held that the City could not simply sell the lots to pay off the tax liability. The United States, the Court held, retained an interest in the property that was "paramount" to the taxing power of the City. Id. at 556.

Federal courts have also invalidated state sales of property in which the United States held a property interest considerably less than legal or equitable title. For example, in Rust v. Johnson, 597 F.2d 174, 178-79 (9th Cir.), cert. denied, 444 U.S. 964 (1979), the Supremacy Clause forbade Los Angeles from foreclosing on property in which the Federal National Mortgage Association had a mortgage interest without making adequate

protection of that interest. The Ninth Circuit held: "State legislation must yield under the supremacy clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." Id. at 179; see also, United States v. General Douglas MacArthur Senior Village, Inc., 470 F.2d 675, 679-80 (2nd Cir. 1972), cert. denied sub nom., County of Nassau v. United States, 412 U.S. 922 (1973); United States v. Roessling, 280 F.2d 933, 936 (5th Cir. 1960).

While sales and foreclosures generally violate the Supremacy Clause, the sale of the lien and subsequent foreclosure here also directly conflict with Congress's directive under the Property Clause: in 37 U.S.C. § 3720(a)(5) Congress has provided that the Secretary of the DVA may "purchase ..., and take title to, property, real, personal or mixed; and similarly sell, at public or private sale, exchange, assign, convey, or otherwise dispose of any such property." Section 3720(a)(5) therefore expressly authorizes the Secretary to take action to dispose of property. It does not authorize anyone or any entity, including another sovereign, to forcibly take it from the DVA.

Therefore, under both the Property Clause and the Supremacy Clause, the New Jersey Superior Court was simply without authority to convey title to federal property to defendants via municipal lien sale and foreclosure sale.

II.    The Foreclosure Sale Here Violated the United States' Sovereign Immunity And Therefore Was Invalid.

Foreclosure sales of United States property are also void under principles of sovereign immunity absent unequivocal congressional consent to the sale. Here, there is no express consent. 38 U.S.C. § 3720(a)(1)'s "sue and be sued" clause does not waive immunity from foreclosure sales as a result of municipal liens. First, the provision only applies to suits arising out of veterans loans and guarantees, not the administration of property. Second, the provision does not waive immunity to a proceeding that, as with the sale here, is inconsistent with the federal constitutional and statutory schemes and gravely interferes with a federal program. Nor does 38 U.S.C. § 3720(a)(6)'s consent to property taxation consent to sale of the property for unpaid taxes.

The United States is constitutionally immune as sovereign from state or local tax or use sales absent express congressional consent to the contrary. See United States v. Cook County, 1997 WL 639049, *10-11 (N.D. Ill. 1997), rev'd on other grounds, 167 F.3d 381 (7th Cir.), cert. denied, 528 U.S. 1019 (1999). The foundational case for this proposition is United States v. Alabama, 313 U.S. 274 (1941). There, the owners of three tracts of land on which Alabama had tax liens conveyed the land to the United States. Id. at 277. Alabama then instituted actions in the county court, obtained a decree for sale of the land, sold the land, and issued certificates of purchase. Id. at 279. The Court held

that the United States took the property subject to the State's pre-existing tax lien. Id. at 282.

> On the issue of the tax sales, however, the Court held that they were null and void:
>
> The proceedings in the county court for the sale of the lands were taken and the decrees were rendered after the United States became the owner of the tracts. A proceeding against property in which the United States has an interest is a suit against the United States.... [I]n the absence of its consent to the prosecution of such proceedings, the county court was without jurisdiction and its decrees, the tax sales and the certificates of purchase issued to the state were void.

Ibid. Thus, the United States is normally immune from foreclosure sales because it is immune from suit absent consent. See also, United States v. Lewis County, 175 F.3d 671, 678 (9th Cir.) (property foreclosure is a suit against United States which requires consent), cert. denied, 528 U.S. 1018 (1999).

With respect to the United States' immunity from suit, it is presumed to be complete absent a highly explicit waiver. "It is elementary that '[t]he United States as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); see also, Block v. North Dakota, 461 U.S. 273, 280 (1983) (States cannot sue United States absent an express waiver of this immunity by Congress); United States v. Mottaz, 476 U.S. 834, 841 (1986) (holding that the terms of the United States' waiver of sovereign immunity define the extent of the Court's jurisdiction).

Waivers from suits, including state use foreclosure suits, must be "unequivocal," <u>United States Dep't of Energy v. Ohio</u>, 503 U.S. 607, 615 (1992); <u>Mitchell</u>, 445 U.S. at 538; <u>United States v. County of Richland</u>, 500 F. Supp. 312, 315 (D.S.C. 1980) (specifically concerning tax foreclosure sales), and are subject to strict construction favoring the United States. See <u>United States Dep't of Energy</u>, 503 U.S. at 615. Therefore, in addition to the Property and Supremacy Clauses prohibiting foreclosure sales, the United States is immune from judicially enforced sales absent unequivocal consent by Congress.

No such express consent to foreclosure sales is present here.

> A. <u>38 U.S.C. § 3720(a)(1) Does Not Waive Sovereign Immunity from Foreclosure Sales.</u>

38 U.S.C. § 3720(a) provides:

> ... with respect to matters arising by reason of this chapter [Chapter 37 – Housing and Small Business Loans], the Secretary may
>
> (1) sue and be sued in the Secretary's official capacity in any court of competent jurisdiction, State or Federal, but nothing in this clause shall be construed as authorizing garnishment or attachment against the Secretary, the Department of Veterans Affairs, or any of its employees.

The express provision and its history make clear that Congress had no intention in this "sue and be sued clause" of waiving federal immunity from tax or use sales. Moreover, general law concerning "sue and be sued" waivers support that such waiver would not apply given the constitutional and statutory structure and the policy concerns present here.

The DVA "sue and be sued" clause does not waive immunity from the sale here. As the reference to Chapter 37, dealing with housing and small business loans, suggests, Congress has always intended that the DVA "sue and be sued" sovereign immunity waiver apply only to home-loan guaranty matters. See S. Rep. No. 95-412, at 22 (1977), reprinted in 1977 U.S.S.C.A.N. 2636, 2652; see also, Smith v. Principi, 281 F.3d 1384, 1388 (Fed. Cir.) (waiver only in DVA's capacity as lender or guarantor), cert. denied, 537 U.S. 821 (2002); Wilson v. Squirrel, 2000 WL 33154288, *3 (E.D. Pa. Jan. 29, 2000) (dismissing on subject-matter jurisdiction grounds counts arising out of transfer of property by DVA rather than home loan guaranty program).  Thus, since the sale here did not concern the home loan guaranty program, the "sue and be sued" clause did not waive DVA's immunity from the state judicial action, and the foreclosure sale is void.

Moreover, Congress specifically amended the "sue and be sued" waiver in 1977, stating that it should not be construed to include garnishment or attachment against the DVA, its predecessor, or any of their employees.  Veterans Disability Compensation and Survivor Benefits Act of 1977, Pub. L. No. 95-117, § 403, 91 Stat. 1063, 1066 (1977).  It did so to clarify its preexisting understanding that the "sue and be sued" language was only a partial waiver of immunity, applicable only to home loan guaranty matters, and specifically to repudiate a district court decision permitting garnishment of a DVA employee's salary.  S. Rep. No. 95-412, at 22-23 (1977), reprinted in 1977 U.S.S.C.A.N. 2636, 2652, 2653.  Given Congress's express reaction to a specific ruling to make clear

that it did not want the DVA subjected to garnishment or attachment of its property, defendants cannot in good faith suggest that Congress understood the "sue and be sued" clause to subject the DVA property to attachment and sale by the tax collector.

Even if the DVA "sue and be sued" clause were broader, however, it is subject to implied restrictions present here. Thus, the fact that the Secretary owed taxes and fees to the City of Newark and that the City could have received a judgment against the Secretary for those taxes and fees does not justify summary execution of such a judgment by the taking of federal property. That the order sought in the state proceedings – the taking of the DVA's property – would restrain the DVA from acting with respect to the property in the manner intended by Congress – namely the sale of the property to replenish the funds available to guaranty VA loans – made it a suit against the United States from which the United States was immune rather than a suit against the Secretary. As the suit is inconsistent with the Property Clause, it is impliedly excepted from the "sue and be sued" clause.

The suit is also inconsistent with the DVA's statutory scheme and interferes with its federal purpose. Congress' statutory scheme vests the Secretary alone with the discretion to decide when and how to sell federal property. Yunis v. United States, 118 F.Supp.2d 1024, 1029 (C.D. Cal. 2000). The Yunis court also held that a foreclosure sale of DVA property – there it was a nonjudicial sale – effects a grave interference with the performance of DVA's government function by reducing the funding to DVA's Veterans

Housing Benefits Program Fund, which encourages home lending to veterans by reimbursing lenders for losses and costs in veterans loans, the sale of inventory property being one source of funding for the Fund. Id. at 1028-29. The same applies to the purported judicial sale here. See also, Bass v. United States, 2005 U.S. Dist. LEXIS 2959 (N.D. Il. 2005)(County tax sale of DVA property prohibited and "...the sue or be sued clause does not provide Lake County with tax sale authority over property of the federal government.")

Therefore, the "sue and be sued" clause did not waive immunity from the tax sale, and the sale was invalid.

  B. 38 U.S.C. § 3720(a)(6) Does Not Waive Sovereign Immunity from Foreclosure Sales.

38 U.S.C. § 3720(a)(6) provides: "The acquisition of any such property shall not deprive any State or political subdivision thereof of its civil or criminal jurisdiction of, on, or over such property (including power to tax) ..." Clearly, this in no way unequivocally discusses use sales so the presumption is that there is no waiver of the DVA's immunity from use sales.

Case law supports that a waiver of the United States' immunity from taxation does not also waive its immunity from tax collection activity, including tax sales. For example, the Ninth Circuit held that 7 U.S.C. § 1984, which subjected Farm Services Agency property to taxation by State and local authorities "in the same manner and to the same extent as other property is taxed," did not unequivocally waive sovereign immunity for

tax foreclosure actions by Lewis County, Washington. Lewis County, 175 F.3d at 678; see also, County of Richland, 500 F. Supp. 312, 315 (D.C.S.C., 1980)(holding that statute which subjected HUD property to taxation by states and localities "to the same extent, according to its value, as other real property is taxed," did not waive immunity for the summary execution and sale of HUD property for nonpayment of taxes).

Since 38 U.S.C. § 3720(a)(6) does nothing more than waive the DVA's immunity from municipal tax and use fees and since a waiver of immunity does not waive immunity from foreclosure sales, the purported sale here was invalid and title did not transfer.

    C.    Case Law Concerning the Sale of DVA Property Supports That the Sale Here Was Invalid.

The United States District Court for the Central District of California's Yunis decision supports that DVA property cannot simply be taken and sold under state law.[1] In Yunis, DVA property, acquired as a result of a defaulted veteran loan, was sold in a nonjudicial foreclosure sale as a result of unpaid homeowners association assessment fees. As noted earlier, Congress has provided that the DVA can "sue and be sued." The court first held that, given the power delegated to Congress under the Property Clause and the Supremacy Clause of the United States Constitution, the question "whether a title to land which had once been the property of the United States had passed" was a question of

---

[1] A second decision of that court issued the same day – Secretary of Housing and Urban Development v. Sky Meadow Ass'n, 117 F.Supp.2d 970 (C.D. Cal. 2000) – offered the same reasoning for declaring invalid a state sale of property belonging to the Department of Housing and Urban Development.

14

3674298.1

federal law. Yunis, 118 F.Supp.2d at 1033 (quoting Wilcox, 38 U.S. at 517). Next, the court held that the applicable rule of decision should be federal common law, not merely adopting state law, holding that state law – permitting nonjudicial foreclosure sales – would interfere with the statutory mission of the DVA to guarantee home loans by depriving those agencies of needed funds. Yunis, 118 F.Supp.2d at 1035. Finally, the court held that, since Congress had given the Secretary sole discretion as to the disposal of DVA property, the federal rule of decision there should be that the property could not be subjected to involuntary sale. Yunis, 118 F.Supp.2d at 1036.

If anything, the reasoning of Yunis is stronger here. Yunis concerned nonjudicial foreclosure sales. While Supremacy Clause analysis, concerning federal-state power and relations, is as applicable to the judicial foreclosure here as it was to the nonjudicial foreclosure in those cases, that judicial foreclosure is used here **additionally** infringes upon the United States' sovereign immunity from suit. See Yunis, 118 F.Supp.2d at 1035 n.9 (holding that, while there were no sovereign immunity concerns raised by the nonjudicial foreclosure sale, the sale nonetheless interfered with the government's property rights under the Supremacy Clause).

Similarly, the District Court for the Northern District of Illinois held in Bass v. United States, 2005 LEXIS 2959 (N.D. Il. 2005) that a tax sale of DVA property was impermissible under the Supremacy Clause and that Congress had not waived the DVA's immunity from tax sales.

Like the holding in <u>Yunis</u> and <u>Bass</u>, the Court should hold that the sale is invalid and that title has not passed from the Secretary of the DVA.

## CONCLUSION

The municipal lien foreclosure sale by which defendant 26 Hobson Associates claims to have obtained title was invalid. Both the Property Clause and the Supremacy Clause prohibit a forced municipal lien foreclosure sale of federal property. In addition, the United States and its agencies and instrumentalities are immune from forced sales absent an unequivocal waiver of that immunity. Not only is there not an unequivocal waiver, there is not even an arguably equivocal waiver under the case law. Therefore, the Court should declare the order of sale of the property void, order the Sheriff sale void, and declare the property is owned and titled to the DVA.

Dated: October 24, 2008.

CHRISTOPHER J. CHRISTIE
United States Attorney


/s/ Jonathan D. Carroll
JONATHAN D. CARROLL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Telephone: (202) 307-6669
Email: Jonathan.D.Carroll@USDOJ.GOV