## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————  :
                                               :
UNITED STATES OF AMERICA,      :
                                               :            Civil Action No.  07-5961 (PGS)
            Plaintiff,                        :
                                               :
      v.                                      :
                                               :                    OPINION
CITY OF NEWARK,  et al.            :
                                               :
            Defendants.                     :
———————————————————————:

        This matter comes before the court on a motion for summary judgment by the United

States of America and on cross-motions for summary judgment by Hobson Associates, LLC

("Hobson") and the City of Newark.  Pursuant to 38 U.S.C. § 301, the Department of Veterans

Affairs (the "DVA") is an executive department of the United States. The Secretary of Veterans

Affairs (the "Secretary") is the head of the DVA and, pursuant to 38 U.S.C. § 303, is responsible

for the proper execution, administration, and management of the DVA.

## STATEMENT OF FACTS

        By Sheriff's Deed dated January 4, 1983, the DVA purchased title to 26 Hobson Street,

Newark, New Jersey known as Block 3059 Lot 33 ("the Property".) (Govt. Ex. 1.)

        On August 24, 1983, the DVA entered into an Installment Contract for Sale of Real

Estate of the Property with Minne McKoy, Stewart McKoy, and Jerome McKoy (the "McKoys").

Pursuant to paragraph 18 of the installment contract, title remained with the DVA until full

payment of the purchase price had been made. (*Id*. Ex. 2.)

        Pursuant to paragraph 5 of the installment contract the McKoys were to pay all taxes and

municipal fees for 1983 and beyond. (*Id.*)

The McKoys have never made full payment on the installment contract, and the DVA has never conveyed the property to the McKoys or any other person or entity. (*Id*.  Ex. 3.)

On December 16, 1999, the Collector of Taxes for the City of Newark issued a Certificate of Sale for Unpaid Municipal Liens (a water and sewer bill) to defendant Crusader Servicing Corporation ("Crusader") for $185.02. (*Id*. Ex. 4.)

On August 31, 2005 the attorneys for Crusader wrote to DVA in Newark, Brooklyn and Washington by certified mail about the DVA's deed to the property (Crusader wrote a total of five letters to the DVA).  Each letter states in part:

> Our office represents Crusader Servicing Corporation, a holder of a tax sale certificate against the above property and we are in the process of commencing foreclosure proceedings, however, the last deed of record shows the owner as the Administrator of Veterans Affairs. The last deed was a Sheriff's Deed for a mortgage foreclosure action and was recorded on February 8, 1983.  I am trying to find out if, in fact, the VA still owns this property or if the VA has since sold to the property and if so, if there is any deed information regarding this.

(Gonski Aff. Exs. 19-23.)  On September 16, 2005, the attorneys received an answer from Max Shemtob, regional counsel. Mr. Shemtob's letter gives direction on how to collect the sewer fees paid by Crusader.  (*Id*. Ex. 24.)  Moreover, Mr. Shemtob states that the property had been sold to the McKoys in 1983 under the terms of an installment contract and that the DVA "has no knowledge as to whether or not the McKoys are still the equitable owners of the property as a result of the installment contract."  (*Id.*)  Mr. Shemtob further states that "[t]here is no requirement to keep VA apprised of the status of the contract ownership once VA assigns the contract." (*Id.*)

By letter dated November 5, 2005, the DVA terminated the installment sales contract due to the McKoys' failure to make payments as required, and instituted a suit against the McKoys to terminate the agreement.

On or about February 17, 2006, Crusader filed a complaint for foreclosure of tax sale certificate(s) with demand for judicial sale in the Superior Court of New Jersey, Essex County. (Govt. Ex. 5.) The complaint erroneously alleges that the DVA transferred its ownership interest in the property to the McKoys. (*Id.* Ex. 5 ¶ 10.) The complaint reads in pertinent part:

> The UNITED STATES OF AMERICA is joined as a
> Defendant because of the unrecorded installment of Sales
> Agreement referred to above, which transferred the interest
> of the Department of Veterans Affairs. The last deed of
> record is to the DVA and appears in Deed Book 4775 Page
> 818.

(*Id.* Ex. 5 ¶ 12.) On April 14, 2006, the complaint was personally served upon the United States Attorney in Newark, New Jersey, and served by certified mail upon the Department of Justice in Washington D.C. around the same date.

On  April 20, 2006, the United States corresponded with Crusader's attorney acknowledging service and "admitting the priority of Plaintiff's mortgage."  The letter reads:

> The United States Attorney for the District of New Jersey hereby
> acknowledges service of the Summons and Complaint filed by
> plaintiff in the captioned matter as of the date hereof, providing all
> the jurisdictional requirements of 28 U.S.C. § 2410 have been met.
> The United States will not file an Answer in this matter, as it
> admits the priority of Plaintiff's's mortgage, and will not oppose
> the entry of default against it.
>
> The United States does specifically request that plaintiff's final
> judgment, whether or not submitted for its consent, contain
> language similar to that set forth on the attached information sheet.

> PLEASE PROVIDE THIS OFFICE WITH COPIES OF THE
> SHERIFF'S SALE NOTICE.  Your client may obtain a release of
> the Government's lien by paying the appropriate government
> agency the amount due on the lien prior to the sale; or by
> negotiating for the release of it's right of redemption after sale by
> contacting this Office and requesting the appropriate forms.

(Gonski Aff. Ex. 26.)

In March, 2006, a lis pendens was issued that a foreclosure suit had been commenced,

and it refers to the United States' interest. It reads:

> The last deed is vested in the Department of Veterans Affairs and
> appears in Deed Book 4775 Page 818, but the USA issued an
> unrecorded Installment Sales Agreement to Jerome McKoy,
> Stewart McKoy, and Minnie McKoy in 1983, and assigned the
> Agreement to GMAC in 1988.

(*Id*. Ex. 14.)

 On August 10, 2006, since the United States never answered, default was entered.

On November 22, 2006, the Superior Court entered a judgment directing the property be

sold at public auction. (Govt Ex. 6.)

On February 27, 2007, the Sheriff for Essex County held a sale of the property where the

winning bidder assigned it bid to defendant Hobson and a deed was issued to Hobson as a result.

(*Id*. Ex. 7.)

On April 19, 2007 the DVA raised its first objection to the sheriff sale of the property on

the ground of sovereign immunity. (Gonski Aff. Ex. 32.)

On July 24, 2007, foreclosure counsel wrote to the United States Attorney's Office

informing the government that he believed that "the USA might have a continuing right of

redemption which would eliminate the need for litigation to set aside the deed and foreclosure." (*Id.* Ex. 33.)

On or about August 21, 2007, the Department of Justice replied that the DVA "may be interested in reimbursing your client in connection with the property . . . ."  (*Id.* Ex. 35.)  On August 28, 2007, foreclosure counsel responded and suggested that the government contact the Essex County Sheriff's Department to inquire as to a right of redemption.  (*Id.* Ex. 36.)

On October 15, 2007, the Department of Justice informed foreclosure counsel that the sheriff's department instructed them that a "deed has been issued and therefore [the] property cannot be redeemed."  (*Id.* Ex. 37.)  On October 17, 2007, foreclosure counsel responded saying that he could only presume that the U.S. Government had the right to redemption, and "that it has some understanding of how to exercise that right of redemption pursuant to federal law." (*Id.* Ex. 38.)

Prior to the installment contract's "final payment" date of September 1, 2008, Hobson, who admits that it stands in the equitable poise of the McKoys with reference to the installment contract, attempted to pay the government the outstanding amount due on the installment contract (the outstanding principal amount of $12,185.28 with interest had grown to $22,319.54). (*Id*. Ex. 39.)  The government admits that it returned the check and refused Hobson's settlement offer.

## **DISCUSSION**

The DVA seeks for this court to invalidate the sale of the property, pursuant to 38 U.S.C. § 3720, claiming that it did not waive its sovereign immunity to suit in the foreclosure action. Hobson claims that, in this instance, the DVA created an equitable title interest in the McKoys,

5

who then defaulted on their municipal obligations.  Further, Hobson argues that the DVA was

obliged to pay for those municipal services in any event, and that the resulting foreclosure was

neither garnishment nor attachment within the meaning of federal law.  The City of Newark

argues that the government waived its sovereign immunity by entering into the installment

contract with the McKoys while retaining the record title interest, and thus has no room to now

complain about the foreclosure upon and sale of the subject premises.

### I.  Standard of Review

### A.  Motion for Summary Judgment--Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the moving party

demonstrates that there is no genuine issue of material fact, and that the evidence establishes the

movant's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986).  A genuine issue of fact exists only if a reasonable jury could return a verdict for

the non-movant, and it is material only if it may affect the outcome of the suit based upon

substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a

motion for summary judgment, a district court may not make credibility determinations or

engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be

believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating

Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

After the movant has satisfied this burden, the non-moving party must establish that a

genuine issue of material fact exists.  *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d

1103, 1109 (3d Cir. 1985).  "[U]nsupported allegations . . . and pleadings are insufficient to repel

summary judgment."  *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

Rather, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

**B. Sovereign Immunity**

Because there are no factual disputes concerning the non-payment of municipal fees on the Property and the events that led to the tax sale of the Property, the legal issue raised by the DVA is ripe for summary judgment. The DVA contends that pursuant to the Supremacy and Property Clauses of the U.S. Constitution, and 38 U.S.C. § 3720, the doctrine of sovereign immunity applies in this case to the Property, which was owned by the DVA, and precludes the tax sale of the Property to a private third party.

The Property Clause of the U.S. Constitution provides that: "[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . ." U.S. Const. art. IV, sec. 3, cl. 2. The Supreme Court has repeatedly emphasized the constitutional principle that: "[t]he power of Congress to dispose of any kind of property belonging to the United States, 'is vested in Congress without limitation.'" *Alabama v. Texas*, 347 U.S. 272, 273. Federal property "cannot be seized by authority of another sovereignty against the consent of the Government." *Armstrong v. United States*, 364 U.S. 40, 43 (1960).

When Congress does act pursuant to the Property Clause, those actions are given precedence over any local or state laws by the powers granted through the Supremacy Clause of the U.S. Constitution. The Supremacy Clause states that: "[t]his Constitution, and the Laws of

the United States which shall be made in Pursuance thereof; . . . shall be the Supreme Law of the

land; and the Judges in every State shall be bound thereby."  U.S. Const. art. VI, cl. 2.  Thus,

"[u]nless the federal government acts, title does not pass under the laws of the United States."

*Yunis v. United States*, 118 F. Supp. 2d 1024, 1032 (C.D. Cal. 2000).

Defendants argue that Congress has created such a statutory waiver of the DVA's

sovereign immunity.  The relevant portions of section 3720(a) of the Veteran's Benefits section

of the U.S. Code provide:

> (a) Notwithstanding the provisions of any other law, with respect to
> matters arising by reason of this chapter, the Secretary may--
>
> (1) sue and be sued in the Secretary's official capacity in any court of
> competent jurisdiction, State or Federal, but nothing in this clause shall be
> construed as authorizing garnishment or attachment against the Secretary,
> the Department of Veterans Affairs, or any of its employees; . . .
>
> (5) purchase at any sale, public or private, upon such terms and for such
> prices as the Secretary determines to be reasonable, and take title to,
> property, real, personal or mixed; and similarly sell, at public or private
> sale, exchange, assign, convey, or otherwise dispose of any such property;
> and . . .
>
> (6) complete, administer, operate, obtain and pay for insurance on, and
> maintain, renovate, repair, modernize, lease, or otherwise deal with any
> property acquired or held pursuant to this chapter. The acquisition of any
> such property shall not deprive any State or political subdivision thereof of
> its civil or criminal jurisdiction of, on, or over such property (including
> power to tax) or impair the rights under the State or local law of any
> persons on such property. Without regard to section 3302(b) of title 31 or
> any other provision of law not expressly in limitation of this paragraph, the
> Secretary may permit brokers utilized by the Secretary in connection with
> such properties to deduct from rental collections amounts covering
> authorized fees, costs, and expenses incurred in connection with the
> management, repair, sale, or lease of any such properties and remit the net
> balances to the Secretary.

Defendants contend that pursuant to § 3720(a)(1) Congress has partially waived sovereign immunity for the DVA, permitting it "to sue and be sued" in a foreclosure action. Additionally, defendants argue that pursuant to § 3720(a)(6), Congress expressly provided a waiver as to immunity from taxation, and thus, it follows that the waiver extends to foreclosure suits.

## II.  No Unequivocal Waiver of Sovereign Immunity under Section 3720(a)

### A.  Section 3720(a)(1)

To support this proposition under § 3720(a)(1), defendants assert several cases where courts have allowed the DVA to be sued as a "lien holder."  *See, e.g.*, *United States v. Marion County of Fl.*, 826 F. Supp. 1400 (M.D. Fl. 1993); *United States v. Gilmore*, 62 F. Supp. 2d 576 (D. Conn. 1999).  Defendants suggest that the Installment Sales Contract in this case was the equivalent of a federal lien.  Defendants contend that "[t]he Installment Sales Contract in this case is a mortgage.  By disguising a mortgage as an installment sales contract, the DVA has managed to circumvent the 'sue or be sued' clause of 38 U.S.C. § 3720(a)(1)."  While the Court finds that the defendants' position is not without merit; the Court must construe such statutes affecting sovereign immunity as narrowly as possible.  The defendants gloss over the significant and undisputed fact that at all times the DVA has held title to this land.  The DVA was never fully paid under the Installment Sales Contract, and pursuant to that agreement, ownership was never transferred to the McKoys.  At all relevant times, from 1983 to the present, the DVA and U.S. Government have retained the deed to the Property.

The cases cited by Defendants are inapposite.  In *Marion County*, the case concerned a DVA loan made under a federal lending program.  The court applied the very narrow ruling of

*U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979), which held that "relative priority of private and consensual liens created by federal lending programs is to be determined under 'non-discriminatory state laws.'" *Marion County,* 826 F. Supp. at 1402 (citing *Kimbell Foods*, 440 U.S. at 740); *see also Gilmore*, 62 F. Supp. at 576 (applying *Kimbell* to a loan made pursuant to a federal lending program) . The DVA in *Marion County* did not own the property in question. Further, the very narrow ruling in *Marion County* concerned applying state law to determine the priority of a federal loan made pursuant to a federal lending program. Here, the DVA owned the Property in its entirety, and attempted to sell it through an installment contract, which was never fully executed. The McKoys failed to make their payments under the contract, and thus the deed remained in the DVA's control. The defendants' rationale is misplaced because the DVA, rather than only being a lien-holder, has actual title to the Property. Because the U.S. Supreme Court has made it clear that waivers of sovereign immunity must be construed in favor of the sovereign, we find that § 3720(a) does not waive immunity on behalf of the DVA. Any such waiver must be expressed unequivocally by Congress–and no such unequivocal waiver exists here.

**B. Section 3720(a)(6)**

Likewise, defendants reliance on § 3720(a)(6) is misplaced. It is well established that "[f]oreclosure against federally owned  property is a suit against the United States, which cannot be prosecuted without its consent." *United States v. Lewis County, WA*, 175 F.3d 671, 677 (9th Cir. 1999) (citing *Alabama*, 313 U.S. at 282). Defendants suggest that because § 3720(a)(6) provides a waiver of immunity from state and local taxation, it likewise extends to a consent to be sued in a tax sale. We cannot extend such an intent without an *unequivocal* waiver from Congress expressly waiving immunity in these types of suits–which does not exist in this statute.

10

In *Lewis County*, the court considered a federal statute, 7 U.S.C. § 1984, that partially waived the immunity of the federal government from state taxation for property owned by the Federal Farm Service Agency.  The county argued that the statutory provision of § 1984 providing that the federally owned property "shall be the subject to taxation by State, territory, district, and local political subdivisions in the same manner and to the same extent as other property is taxed . . ." was a broad waiver of sovereign immunity that allowed the county to assess penalties and even foreclose on the property.  The *Lewis County* court disagreed.  The Supreme Court has made it clear to the lower courts that "waivers of sovereign immunity must be strictly construed in favor of the sovereign." *Lewis County*, 175 F.3d at 677; *accord United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992); *McMahon v. United States*, 342 U.S. 25, 27 (1951).  The court concluded that "Congress has not waived the immunity of the United States from interest and penalties.  The term "taxation" does not *unequivocally* include the assessment of interest and penalties." *Id.*  In drawing a narrow reading of § 1984, the court did not find any language expressing "an unequivocal waiver of immunity from interest, penalties, and foreclosure." *Id.* at 678.  Here, the statute is similarly limited in its waiver of immunity.  There is no indication, in the statute or case law, that the language used by Congress in § 3720(a)(6) broadly and unequivocally waived the DVA's immunity from foreclosure suits.  Thus, as in *Lewis County*, we find that there is no express waiver under § 3720(a)(6).

## III.  The Tax Sale of the Property Violated Principles of Sovereign Immunity.

After a close review of the statutory language and intent of § 3720(a), the Court finds that the foreclosure sale of the Property, which presumably gave title to Hobson, was invalid under the Property and Supremacy Clauses of the U.S. Constitution.  For reasons of public policy,

federal government property "cannot be seized by authority of another sovereignty against the consent of the government." *Armstrong v. United States*, 364 U.S. 40, 43 (1960).

While the Court is bound to its ruling today by the strict constitutional principles of sovereign immunity, the facts of this case remain troubling.  The DVA was provided with several opportunities to step in and assert its ownership.  This was not the type of case where a state sovereign or private party attempted to clandestinely seize federal land.  The Defendants repeatedly provided the DVA with notice that the Property was subject to municipal tax liens and would be foreclosed.  Presumably, the DVA did not realize that they needed to assert their right to the property as owners, until after the tax sale had been completed.  DVA employees were provided ample opportunity to object, and yet, no one objected before the tax sale.  Although DVA's lack of diligence is appalling, the defendants clearly understood the nature of the government's title from the outset, and for purchasing of the tax certificate in the amount of $185.02 was a reasonable gamble.

Defendants implore the Court to find that "Congress could not have intended to encourage such irresponsible behavior on the part of the federal government."  That request reaches beyond the role of this Court.  What is clear to the Court is that an unequivocal Congressional waiver of sovereign immunity is required–and that does not exist here.  The DVA employees reside within the Executive department of our government, and do not have the authority to waive the U.S. Government's sovereign immunity–as that is exclusively reserved for Congress.  In the end, any negligence on the part of the DVA or its employees cannot affect this Court's analysis. *Yunis v. United States*, 118 F. Supp. 2d. 1024, 1027 (C.D. Cal. 2000) ("The

VA employees' negligence, however, does not justify or validate a non-judicial sale of property owned by the United States.").

We conclude that the sheriff's sale of the Property to Hobson was invalid because the DVA had not waived its immunity from suit.  Accordingly, the United States must reimburse Hobson for the amount it paid for the property, and pay any past due municipal fees to the City of Newark.

**Conclusion**

Plaintiff's motion for summary judgment is granted, and Defendants' cross-motions for summary judgment are denied.

September 29, 2009                    *s/Peter G. Sheridan*_____
                                     PETER G. SHERIDAN, U.S.D.J.

13